# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**FELIX GARCIA,**

    Plaintiff,

vs.                                                            Case No. 4:07cv474-SPM/WCS

**WALTER McNEIL, TOMMY YOUNG,**
**MARTIE TAYLOR, and LONG N. DO,**

    Defendants.

_____/

## FOURTH REPORT AND RECOMMENDATION[1]

On February 22, 2011, Plaintiff, who is represented by counsel, filed a motion for class certification, doc. 195, and a motion for preliminary injunctive relief, doc. 198. Defendants have filed a response to the motion for preliminary injunction, doc. 212, and the motion to certify a class, doc. 213. Plaintiff was given leave to file replies, docs. 215 and 218, and those replies were filed on May 3, 2011. Docs. 221, 222. Both motions are ready for a ruling and are addressed in this report and recommendation.

---

[1] The first report and recommendation, doc. 40, recommended denial of Defendants' motion for summary judgment, doc. 34. The second report and recommendation, doc. 135, recommended denial in part of the motion to amend, doc. 120. The third report and recommendation, doc. 197, recommended denial of Plaintiff's motion to consolidate, doc. 167.

Plaintiff had previously sought to join with two additional prisoners in this case and filed a motion seeking leave to file a second amended complaint.  *See* docs. 135, 150.  I recommended that the motion to join additional Plaintiffs be denied because prisoners cannot join together in one lawsuit and avoid paying his or her own filing fee.  Doc. 135, citing Hubbard v. Haley, 262 F.3d 1194, 1198 (11th Cir. 2001).  When the motion was denied, Plaintiff was permitted to file an "amended complaint with class action allegations."  Doc. 150.  Plaintiff then filed this motion to certify a class, doc. 195, and the accompanying motion for preliminary injunction relief, doc. 198.[2]

**Plaintiff's individual claim**

Plaintiff alleges in his revised second amended complaint that he is completely deaf in his left ear and severely hard of hearing in his right ear.  Doc. 207, p. 7.  He needs powerful hearing devices to hear with his right ear.  *Id.*  He alleges that he cannot listen to AM or FM radio stations with the radios available through the canteen "because they are ineffective in accommodating his profound hearing loss."  *Id.*, p. 8.  He also alleges that he cannot enjoy the television because he cannot hear television sound "without the sought after reasonable accommodation."  *Id.*  He alleges that his literacy level makes it difficult to read closed-captioning.  *Id.*

Plaintiff alleges that when he was housed at Charlotte Correctional Institution, he "had equipment that allowed him to hear the television and radio."[3]  *Id.*  He alleges that

---

[2] Subsequent to filing the instant motions, Plaintiff filed a motion to consolidate this case with two other cases.  Doc. 167.  That motion was denied.  Docs. 197, 209.

[3] In Plaintiff's *pro se* response to summary judgment, Plaintiff advised that he previously had a small AM/FM radio with a voice amplification device, and a "telecoil loop" which benefitted Plaintiff's hearing abilities.  Doc. 36-3, p. 15, n.6.  I recently directed Plaintiff to clarify his ability to hear television and explain how he could do so at

this equipment was taken from him when he arrived at Polk Correctional Institution. *Id*. He alleges that he then asked for permission at Polk CI "to purchase from an outside vendor a high decibel level AM/FM radio that would allow him to hear the radio and television, just as other inmates do." *Id*. This was his claim in his grievance of August 26, 2007. *Id*., p. 9.

Plaintiff then alleges that he filed another grievance, on February 26, 2010, after this suit was filed. *Id*. There, he asserted that he needed "an electronic device or devices that will allow me to hear the radio and television, so that I can fully understand the spoken words and/or information coming through my hearing aids, when attempting to watch television or listen to the radio." *Id*.

None of this claims a right to be housed at an institution that transmits television audio over radio signals. However, in the portion of the complaint that describes the "parties," Plaintiff alleges:

> Plaintiff, Felix Garcia, has exhausted his state administrative remedies, by use of the inmate grievance procedure, in an effort to be allowed to purchase a radio and other necessary devices that would allow him to

---

Charlotte Correctional Institution. Doc. 238. Plaintiff's reply to that order explains that he "cannot hear or understand what is being said on a normal television set turned up somewhat loud while using just [Plaintiff's] hearing aid." Doc. 239, p. 1. Plaintiff could previously hear television at Charlotte C.I. with the use of a "pocket talker" and a telecoil loop, and he was "positioned next to the television set." *Id.*, at 2. Plaintiff could hear both television and radio (with a Daiwa radio), and because the pocket talker had a microphone type device that would "pick up sound," Plaintiff could also hear people if they spoke into the microphone. *Id.* Plaintiff states that when he transferred to Polk Correctional Institution in 1992, the officers were "amazed" that Plaintiff had the equipment and "forced [Plaintiff] to sign a property destruction from against [his] will." *Id.* Since the televisions were modified at Polk C.I., Plaintiff could not hear the television. *Id.*, at 3. Attached to the response is Exhibit 1 which is the Inmate Personal Property List showing Plaintiff was requesting the property be mailed to Mike Garcia in Tampa, but revealing the property was ultimately "disposed of by the state" and Plaintiff was not permitted to retain the radio, pocket talker, and telecoil loop. Doc. 239-1.

> hear the radio, *and to be assured that he will be housed at an institution that transmits television audio over radio signals*, so that he may be able to enjoy the television as the non-deaf and/or hard of hearing inmates do.

*Id*., p. 3 (emphasis added).

In summary, while the complaint is not clear in this fundamental respect, I conclude that Plaintiff's claim is that he be transferred to a prison that has television that has been altered to transmit the audio portion of the program by radio signal and that he be allowed to buy and have devices that allow him to receive that radio signal and hear it in his right ear, and that he be allowed to use this device or another device like it that allows him to hear ordinary radio.

**Motion to Certify Class, doc. 195**

> Plaintiff alleges a plaintiff class of
>
> all persons who are currently in the custody of the Florida Department of Corrections (hereinafter "FDOC"), or who, in the future will come into the custody of the FDOC, and who are deaf and/or hard of hearing, and who cannot enjoy radio and television programming without electronic assistive devices and access to a television, which is connected to a radio transmitter for the purpose of broadcasting the television audio over radio signals (hereinafter "Plaintiff Class.").

Doc. 195, pp. 2, 4.  Plaintiff seeks certification of a Rule 23(b)(2) class.  *Id*., p. 4.  This accurately restates his individual claim as set forth above.

To certify a class action, a party must first demonstrate all four prerequisites of Rule 23(a) and then "must satisfy at least one of the three requirements listed in Rule 23(b)."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, — U.S. —, 131 S.Ct. 2541, 2548, — L.Ed.2d — (2011).  The party seeking class certification must demonstrate, under Rule 23(a), that:

> (1)   the class is so numerous that joinder of all members is impracticable,

    (2)    there are questions of law or fact common to the class,

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a), *quoted in* Wal-Mart Stores, Inc., 131 S.Ct. at 2548.  Certification of a Rule 23(b)(2) class requires a showing that Defendant has "acted on grounds generally applicable to the Plaintiff Class, thereby making appropriate final injunctive relief with respect to the Plaintiff Class as a whole."  *Id*.

The decision to certify a class "is within the broad discretion of the district court." Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc. 601 F.3d 1159, 1169 (11th Cir. 2010).  Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Califano v. Yamasaki, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), *quoted in* Wal-Mart Stores, Inc., 131 S.Ct. at 2550.  "[T]o justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury' as the class members." *Id*., *quoting* East Tex. Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)) (internal quotation marks omitted).

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.  We

>recognized in *Falcon*[4] that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S.Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S.Ct. 2364; see *id.*, at 160, 102 S.Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable").  Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  " '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' "  *Falcon, supra*, at 160, 102 S.Ct. 2364 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); some internal quotation marks omitted).  Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation.  See *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–677 (C.A.7 2001) (Easterbrook, J.).

Wal-Mart Stores, Inc., 131 S.Ct. at 2551-2552 (footnote omitted).  "The burden of proof to establish the propriety of class certification rests with the advocate of the class." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003), *quoted in* Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009).

### Standing and mootness

Prior to certification of a class, the court must determine that the named plaintiff possesses individual standing.  Murray v. Auslander, 244 F.3d 807, 809 (11th Cir. 2001), *citing* Prado-Steiman v. Bush, 221 F.3d 1266 (11th Cir. 2000); Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987).  If a plaintiff cannot show personal injury, then no Article III jurisdiction exists.  Griffin, 823 F.2d at 1383.  Article III limits federal court jurisdiction to "cases" and "controversies."  Troiano v. Supervisor of Elections in Palm

---

[4] General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Beach County, 382 F.3d 1276, 1282 (11th Cir. 2004), *cited in* Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1183 (11th Cir. 2007).

> [A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed.

Troiano, 382 F.3d at 1281-82, *quoted in* Sheely, 505 F.3d at 1183. A typical argument that a case is moot occurs when a defendant voluntarily ceases a challenged practice. However, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." Sheely, 505 F.3d at 1188, *quoting* Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1333 (11th Cir. 2005).

Defendant contends that Plaintiff is not an adequate class representative because his individual claim is moot. Doc. 213, pp. 9-10. The argument is simple. Defendant belatedly authorized Plaintiff to purchase a device so that he could hear the audio portion of the television program at Polk Correctional Institution. The device worked only at Polk CI because the television at Polk CI had been altered to transmit the audio by radio signal. The mission at Polk CI was then changed to handle re-entry prisoners and since Plaintiff is serving a life sentence, he was transferred to another prison. The other prisons designated to house hearing impaired prisoners do not have televisions that have been altered to transmit audio by radio signal. Indeed, it appears that only Polk CI and one other institution, a work camp not designated for hearing-impaired inmates, have the altered television sets.[5] Therefore, Plaintiff's device, which

---

[5] As will be discussed ahead, Ms. Taylor testified that there are three male institutions designated for permanent assignment of hearing-impaired prisoners, Polk,

he was permitted to obtain and possess, is now useless because Defendant transferred him away from Polk CI. *Id.*, pp. 2-6.

Plaintiff's claim with respect to hearing television is not moot. Two institutions have television sets that transmit the audio by radio, Polk Correctional Institution and a work camp. Plaintiff wants to be transferred to one of those.

The claim for a radio to hear radio might be moot. It might be moot if the device Plaintiff was permitted to obtain at Polk is a radio that also receives ordinary radio programs. A radio that receives all radio broadcasts would work at any institution. But Defendant has devoted the entirety of the argument to the television problem. Thus, I conclude that none of Plaintiff's claims are moot.

**Numerosity**

The court must determine whether "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1), *quoted in* Vega, 564 F.3d at 1266. It has been stated as a "general rule" that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986), citing 3B Moore's Federal Practice ¶ 23.05[1] at n.7 (1978); *see also* Vega, 564 F.3d at 1267; Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir.1986) (affirming certification of a class of "at least thirty-one individual class members" and noting that "the class includes future and deterred job applicants, which of necessity cannot be identified."). *But see* Crawford v. Western Elec. Co., 614

---

Okaloosa, and Tomoka, but apparently only Polk has television sets that broadcast the audio portion of the program by radio.

Page 9 of 16

F.2d 1300, 1305 (5th Cir. 1980) (stating "We certainly cannot say that a class of 34 satisfies the numerosity requirements as a matter of law."). The Eleventh Circuit has noted that, "[a]lthough mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983), *quoted in* Vega, 564 F.3d at 1267. "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." Vega, 564 F.3d at 1267.

Plaintiff asserts that "[h]ere, the numerosity requirement is met, as there are an unknown but significant number of individuals who have been discriminated against by Defendants, and there are additional individuals who will be discriminated against by the Defendants in the same manner in the future." Doc. 195, p. 6. Plaintiff asserts that he cannot provide a number because the ADA Coordinator for the Department of Corrections, Martie Taylor, testified in her deposition that she does not know how many requests she has received in the past for reasonable accommodations because the Department's database does not permit such searches. *Id.* Plaintiff also contends that there will be additional persons who will in the future enter the Department of Corrections and need such accommodation. *Id.*, at 2, 6. Plaintiff argues: "Therefore, the actual number of individuals that fall within the Plaintiff Class definition is unknown, and is beyond any number that could reasonably or practicable be joined in a single lawsuit." *Id.*

Attached to Plaintiff's motion is the deposition of Martie Taylor, given on March 10, 2010. Doc. 195-1. Ms. Taylor was asked, "Are there any other hearing-impaired

inmates in the Department of Corrections that have requested radios so they can access TV, like non-hearing-impaired inmates can?" Doc. 195-1, p. 24. She answered, "there were a lot through that time period of '90 to maybe '94, and that were approved." *Id.* She was then asked, "What I guess I am trying to figure out is since then, since this [radio] was no longer being manufactured, do you have a number of inmates that are requesting radios similar to what Mr. Garcia and Mr. Blackburn are seeking?" *Id.*, at 24-25. She answered, "We have some that have," but could not recall the names. *Id.*, at 25. This follow-up dialogue ensued:

> Q   But you had their records?
>
> A   It would be very difficult to obtain those records.
>
> Q   Why is that?
>
> A   Because I have over a thousand – well, close to 2000 now – records for requests of accommodation, and my database is such that I have to go through them one by one.
>
> Q   So do you have any idea how many inmates have made a request for a reasonable accommodation to have – hearing-impaired inmates – to have a radio of this nature?
>
> A   No.
>
> Q   But it's more than one?
>
> A   More than one.
>
> Q   It's certainly Mr. Garcia, correct?
>
> A   Uh-huh.
>
> Q   you need to –

| | | |
|---|---|---|
| A | | Yes.  Mr. Garcia. |
| Q | | Mr. Blackburn? |
| A | | Yes. |

\*          \*          \*          \*          \*          \*          \*

| | | |
|---|---|---|
| Q | | And other than Blackburn and Garcia, there are others, but you don't know how many? |
| A | | Right. |
| Q | | Could you give me an estimate as to how many? |
| A | | No, I can't. |
| Q | | But it could be in the dozens? |
| A | | No, I wouldn't say in the dozens.  I really can't tell you.  And I don't want to guesstimate. |

Doc. 195-1, pp. 25-26.

Ms. Taylor said "off the top of her head" she could recall that there are three institutions designated to house hearing-impaired prisoners.  *Id.*, p. 27.  Those are Polk, Okaloosa, and Tomoka.  *Id.*  She then said that Lowell, a women's institution, and the four reception centers, would have to be able to accommodate hearing-impaired prisoners.  *Id.*, pp. 27-28.

Later in the deposition, Ms. Taylor was asked about receiving other requests from hearing-impaired inmates for accommodations:

| | | |
|---|---|---|
| Q | | So some inmates have been denied and some of them haven't? |
| A | | They were approved when we had an approved radio. |
| Q | | Now you don't have an approved radio, they are all denied? |

> A    Yes.
>
> Q    You don't know how many that is?
>
> A    No.
>
> Q    Okay. And you are saying that it would be too difficult – if I were to make a public records request or request for production of documents, you would have a hard time finding that?
>
> A    I don't have any assistance. It's just me and . . .
>
> Q    Do you have them on a computer?
>
> A    Well, it's a quasi database.
>
> Q    Excel or some other program?
>
> A    It's not Excel. It's something that they are hardly even using anymore.
>
> Q    Okay. You don't have a search function on there?
>
> A    No. We don't get any money for ADA.

Doc. 195-1, pp. 65-66.

Defendant has also filed an affidavit from Martie Taylor dated May 4, 2011. Doc. 223-1. Ms. Taylor states that she polled the institutions and discovered that other than Polk CI, there is only one other prison that has a television equipped to transmit the audio by radio signal, and that is located at a work camp. *Id.*, p. 1. "Sound for television viewing at the institutions currently designated to house hearing impaired is provided solely through the television's own audio capabilities and closed captioning." *Id.* Ms. Taylor said that she reviewed her files and her database and determined that there were "four requests for high decibel radios, in addition to [Plaintiff's] request, and two requests for TV band radios." *Id.*, pp. 1-2.

Consequently, Plaintiff has not satisfied the numerosity requirement. The evidence from Ms. Taylor's deposition was insufficient to determine the probable number of potential class members, and the numbers revealed in her most recent affidavit, even sharing common or typical claims,[6] is not sufficient. There is no need to address the other three Rule 23(b) factors. The motion for class certification, doc. 195, should be denied.

**Motion for Preliminary Injunction, doc. 198**

Plaintiffs seek a preliminary injunction requiring the Department of Corrections to provide Plaintiff (and the alleged class) with "a reasonable accommodation" to allow them to "purchase a radio and other necessary electronic devices that would allow them to hear the radio and television, and to be assured that they will be housed at an institution that transmits television audio over radio signals, so that [they] may be able to enjoy television programming, just as the non-deaf and/or non-hard of hearing inmates do." Doc. 198, pp. 1-2.

Granting or denying a preliminary injunction is a decision within the discretion of the district court. Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997), *citing* United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983). Guiding this discretion is the required finding that plaintiff has established:

(1) a substantial likelihood of success on the merits;

---

[6] Typicality and commonality have not been shown either. I cannot tell whether any hearing-impaired prisoners have a claim for (1) a radio to hear radio broadcasts, or (2) a radio to hear television audio from a television set that broadcasts the audio by radio, or (3) to be transferred to a prison that has a television set modified to broadcast audio by radio. It is entirely possible that some class members have one of the claims, but not all three.

(2) a substantial threat of irreparable injury if the injunction were not granted;

(3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and

(4) that granting the injunction would not disserve the public interest.

Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Carillon Importers, Ltd., 112 F.3d at 1126; United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983). A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" of all four prerequisites, which is always upon the plaintiff. Jefferson County, 720 F.2d at 1519, *citing* Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974).

Plaintiff has not shown a substantial likelihood on his own claim with respect to television audio. He is serving a life sentence. There are only two institutions with television sets that transmit the audio as a radio signal. One is Polk CI, but that is now an institution that prepares prisoners for release. The other is a work camp. Plaintiff has not shown that he has a right to be transferred to either institution. Plaintiff has not claimed that he has a right under the ADA to require Defendant to modify the television sets wherever he may be housed to transmit the audio portion of the program by radio.

The claim for a radio to hear radio is much simpler, but Plaintiff has devoted his energy to the television problem. Either he now has a radio that works for radio, or he does not. The claim might be moot if the radio that was approved for Polk would enable him to hear radio programs, assuming that other institutions would permit him to possess and use the radio. In any event, entitlement to a preliminary injunction to hear

radio programs has not been shown. The motion for a preliminary injunction should be denied.

**Further proceedings on remand**

A case management order was entered long ago. Doc. 30. Discovery ended on August 11, 2008. *Id.* I recommended denial in part of Defendant's motion for summary judgment. Doc. 40. That was adopted by the court. Doc. 47. Discovery was then reopened after counsel for Plaintiff was appointed, to expire on March 31, 2010. Doc. 51. The discovery deadline was extended several times, but expired on June 30, 2010. Docs. 79, 87, 98. The filing of renewed motions for summary judgment was stayed on July 28, 2010, until further court order. Doc. 130. It is now recommended that if this report and recommendation is adopted, that this case be remanded and that the parties be permitted to file motions for summary judgment within 20 days of the entry of the order adopting this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiff's motion to certify class, doc. 195, be **DENIED**, the motion for a preliminary injunction, doc. 198, be **DENIED**, that the court **ORDER** that the parties may file motions for summary judgment within 20 days of the entry of the order adopting this recommendation, and that the case be **REMANDED** to me for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on July 20, 2011.

    S/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.